IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Criminal No. 1:20-cr-10306-GAO |
| ) | |
| PETER BRAND and ) | |
| JIE "JACK" ZHAO, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS JIE "JACK" ZHAO AND PETER BRAND'S MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION TO DISMISS COUNT I PURSUANT TO <u>FEDERAL RULES OF CRIMINAL PROCEDURE 12(b)(1) AND 12(b)(3)(B)(v)</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................................1

BACKGROUND ..................................................................................................................................3

ARGUMENT........................................................................................................................................5

I.     The Portion of Count One That Charges Conspiracy to Commit Honest Services Fraud Must Be Dismissed Because the Superseding Indictment Fails to Allege That the Defendants Reasonably Foresaw Economic Harm to Harvard. ............................6

II.    The Portion of Count One That Charges Conspiracy to Commit Honest Services Fraud Must be Dismissed for a Second Reason:  The Indictment Fails to Allege an Intent to Deceive. ..................................................................................................................9

III.   The Portion of Count One That Charges Conspiracy to Commit Honest Services Fraud Must be Dismissed for a Third Reason:  The Indictment Fails to Allege that Coach Brand Violated a Fiduciary Duty Owed to Harvard. ...............................................11

CONCLUSION...................................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chelsea Indus., Inc. v. Gaffney*,
 449 N.E.2d 320 (Mass. 1983) .................................................................................................. 12

*Elgawhary v. United States*,
 No. CR DKC 14-0068, 2018 WL 398284 (D. Md. Jan. 11, 2018) ........................................... 7

*McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*,
 904 F.2d 786 (1st Cir. 1990) .................................................................................................... 11

*Sanchez v. Triple-S Mgmt. Corp.*,
 492 F.3d 1 (1st Cir. 2007) ........................................................................................................ 11

*SEC v. Chenery Corp.*,
 318 U.S. 80 (1943) ................................................................................................................... 12

*Skilling v. United States*,
 561 U.S. 358 (2010) ........................................................................................................ 2, 7, 11

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*,
 397 F. Supp. 3d 126 (D. Mass. 2019) ........................................................................................ 8

*TalentBurst, Inc. v. Collabera, Inc.*,
 567 F. Supp. 2d 261 (D. Mass. 2008) ...................................................................................... 12

United States v. Czubinski,
 106 F.3d 1069 (1st Cir. 1997) .................................................................................................. 11

United States v. deVegter,
 198 F.3d 1324 (11th Cir. 1999) ................................................................................................. 7

United States v. Ernst,
 502 F. Supp. 3d 637 (D. Mass. 2020) ..................................................................... 2, 3, 10, 11

United States v. Frost,
 125 F.3d 346 (6th Cir. 1997) .................................................................................................. 6, 7

United States v. Halloran,
 821 F.3d 321 (2d Cir. 2016) ...................................................................................................... 2

United States v. Henderson,
 No. 2:16-cr-0182-LSC-JEO, 2016 WL 5853743 (N.D. Ala. Aug. 17, 2016) ............................ 7

United States v. Jain,
 93 F.3d 436 (8th Cir. 1996) ....................................................................................................... 7

United States v. Khoury,
 No. 20-cr-10177-DJC, 2021 WL 2784835 (D. Mass. July 2, 2021) ................................. 1, 7, 8

United States v. Lusk,
 No. 2:15-cr-00124, 2017 WL 508589 (S.D. W. Va. Feb. 7, 2017) ........................................... 7

United States v. Martin,
 228 F.3d 1 (1st Cir. 2000) .................................................................................................. 1, 6, 7

*United States v. Murphy*,
    323 F.3d 102 (3d Cir. 2003) .................................................................................................. 6

*United States v. Pennington*,
    168 F.3d 1060 (8th Cir. 1999) ............................................................................................... 6

*United States v. Pirro*,
    212 F.3d 86 (2d Cir. 2000) ..................................................................................................... 9

*United States v. Sawyer*,
    85 F.3d 713 (1st Cir. 1996) ......................................................................................... 2, 9, 11

*United States v. Sidoo*,
    471 F. Supp. 3d 369 (D. Mass. 2020) .................................................................................... 5

*United States v. Simon*,
    12 F.4th 1 (1st Cir. 2021) ..................................................................................................... 11

*United States v. Sun-Diamond Growers of Cal.*,
    138 F.3d 961 (D.C. Cir. 1998), *aff'd*, 526 U.S. 398 (1999) ................................................ 6, 7

*United States v. Vicenzi*,
    No. CRIM. 87–222–N, 1988 WL 98634 (D. Mass. Feb. 16, 1988) ......................................... 5

*United States v. Vinyard*,
    266 F.3d 320 (4th Cir. 2001) ............................................................................................. 6, 7

*United States v. Woods*,
    978 F.3d 554 (8th Cir. 2020) ................................................................................................. 7

**Statutes**

18 U.S.C. § 1346 ................................................................................................................ 6, 7, 9, 11

**Rules**

Fed. R. Crim. P. 12 ...................................................................................................................... 12

**INTRODUCTION**

The Superseding Indictment charges defendants Jie "Jack" Zhao and Peter Brand with federal programs bribery and conspiracy to commit federal programs bribery and honest services fraud. It alleges that they committed these crimes by agreeing that Mr. Zhao would bribe Coach Brand, then Harvard's fencing coach, to designate Mr. Zhao's sons as fencing recruits and facilitate their admission to Harvard. Regardless of whether this allegation, if true, suffices to prove federal programs bribery, it does not suffice, on its own, to prove honest services fraud. The Superseding Indictment fails to allege at least three additional facts that are required elements of honest services fraud in this circuit.

First, the Superseding Indictment fails to allege that the conspiracy involved foreseeable harm to Harvard's tangible economic interests, which, in this circuit, is an element of honest services fraud. *See United States v. Martin*, 228 F.3d 1, 17 (1st Cir. 2000). The Superseding Indictment does not allege that Harvard was deprived of money, nor could it, because the Zhaos paid full tuition. And it does not allege that Harvard was deprived of admission slots reserved for qualified student-athletes, nor could it, because the Zhaos were eminently qualified for admission to Harvard as fencing recruits: they were internationally competitive fencers with stellar grades and test scores who plainly met Harvard's requirements for admission. That distinguishes this case from other college admissions cases in which courts have denied motions to dismiss based on a failure to allege foreseeable harm. *See, e.g.*, *United States v. Khoury*, No. 20-cr-10177-DJC, 2021 WL 2784835, at *5 (D. Mass. July 2, 2021) (holding that indictment adequately alleged foreseeable harm because it alleged the defendant "paid a bribe [to a coach] to designate his daughter as a Recruit, *despite her athletic qualifications being below that of a typical Recruit*, [in order to] secure one of Georgetown's limited admissions slots reserved for *qualified* Recruits" (emphasis added)).

1

Second, the Superseding Indictment does not allege, as it must, that the conspiracy involved "deceit." *United States v. Sawyer*, 85 F.3d 713, 732 n.16 (1st Cir. 1996). In the so-called Varsity Blues matters, the government satisfied this requirement by alleging that the defendants tricked college admissions officers into making admissions offers by affirmatively misrepresenting applicants' academic and athletic credentials and by concealing the payment of bribes. *See, e.g., United States v. Ernst*, 502 F. Supp. 3d 637, 653–54 (D. Mass. 2020) (rejecting argument that indictment failed to allege deceit because it "specifically alleges that all Defendants *designated athletic recruits not based on their merit as recruits, but in return for bribe payments* made by Singer and the recruits' parents and that these *bribe payments and unmerited designations were concealed so as to frustrate the universities' ability to detect the illicit quid pro quo*" (emphasis added)). Here, in contrast, the government fails to allege (and could not truthfully allege) that Coach Brand did not designate the Zhao brothers as recruits based on merit, that anyone deceived Harvard about the Zhaos' qualifications for admission, or that Harvard admitted them on the basis of anything other than genuine academic and athletic merit. The Superseding Indictment does not even allege that the conspirators agreed to deceive Harvard about the alleged payment of bribes. This failure to allege any deceit independent of the alleged theft of honest services (i.e. the alleged bribery itself) is fatal to the Superseding Indictment.

Third, the Superseding Indictment fails to allege that Coach Brand owed a fiduciary duty to Harvard that was violated by the alleged conduct. That, too, is an element of honest services fraud. *See, e.g., United States v. Halloran*, 821 F.3d 321, 337 (2d Cir. 2016) (noting that "a violation of a fiduciary duty" is an "element of honest-services fraud" (citing *Skilling v. United States*, 561 U.S. 358, 407 (2010))). Once again, the absence of such an allegation distinguishes this case from other college admissions cases in which motions to dismiss on this ground have

2

been denied. *See, e.g., Ernst*, 502 F. Supp. 3d at 653 (finding allegations of fiduciary duty sufficient because indictment specifically alleged "that each of the Defendants, in the capacity in which they were employed, owed a duty of honest and faithful services to the universities that so employed them").

For each of these reasons, the Court must dismiss Count One of the Superseding Indictment to the extent it charges a conspiracy to commit honest services wire fraud.

## BACKGROUND

Count One of the Superseding Indictment alleges that between 2012 and 2017, Mr. Zhao engaged in a conspiracy with Coach Brand that had two objects: to "commit federal programs bribery and honest services fraud." Superseding Indictment (Dkt. 56, "SI") ¶ 7, 9. With respect to the second object, it alleges in relevant part that the defendants "devised and intend[ed] to devise a scheme and artifice to defraud, and to deprive Harvard of its right to the honest and faithful services of its employee, Peter Brand, through bribes and kickbacks." *Id.* ¶ 32(b). It alleges that the conspiracy's purpose was to "facilitate the admission of Applicants 1 and 2 [i.e. Mr. Zhao's sons] to Harvard as fencing recruits in exchange for bribes from ZHAO." *Id.* ¶ 7. And it alleges that the manner and means of the conspiracy included Mr. Zhao's "[m]aking a stream of payments to BRAND, or to third parties for BRAND's personal benefit, totaling more than $1.5 million, in exchange for BRAND's designation of [Mr. Zhao's sons] as Harvard fencing recruits." *Id.* ¶ 8(b).

Although the Superseding Indictment alleges that the defendants "devise[d] a scheme and artifice to defraud," it does not describe any way in which the defendants deceived, or intended to deceive, Harvard. It does not allege, for example, that anyone misrepresented the Zhaos' academic or athletic credentials to Harvard, or that Harvard would not have admitted them absent some kind of deceit. Although it alleges that Coach Brand accepted money from Mr. Zhao in exchange for designating the Zhaos' as recruits, it does not allege that Coach Brand deceived Harvard by

3

designating them as recruits – or, for that matter, that either defendant deceived Harvard about the payments themselves. The Superseding Indictment also fails to allege that the conspiracy involved foreseeable harm to Harvard's tangible economic interests. And although it alleges that the conspirators agreed to deprive Harvard of its right to "the honest and faithful services of its employee, Peter Brand" (*id.* ¶ 32(b)), it fails to allege as a factual matter that Coach Brand actually owed a duty of honest and faithful services to Harvard – much less that he violated any such duty.

The government's failure to allege these elements of honest services fraud in the Superseding Indictment is no accident; it knows how to allege them, because it did so in every single indictment in the Varsity Blues matters. It did not allege them here because it could not truthfully do so. Harvard was not deceived into admitting the Zhao children as fencing recruits because no deceit was necessary, and no deceit occurred. It is a matter of public record that both Zhao children were exemplary high school student-athletes who graduated from the St. Albans School in Washington, D.C., with nearly perfect grades and standardized test scores; and they were nationally-ranked fencers who represented the United States at World Cup fencing tournaments around the globe.[1] Harvard recruited and admitted them based on their past achievements and future promise, and they more than lived up to that promise. Both competed all four years on Harvard's varsity fencing team, won Ivy League championships, and earned stellar grades.[2] Eric

---

[1] In high school, Eric and Edward Zhao were both members of several World Cup fencing teams, earned membership in St. Albans' *Cum Laude* Society, and were National Merit Commended Scholars. *See* Eric Zhao, GOCRIMSON.COM, https://gocrimson.com/sports/mens-fencing/roster/eric-zhao/4379 (last visited Jan. 26, 2022); Edward Zhao, GOCRIMSON.COM, https://gocrimson.com/sports/mens-fencing/roster/edward-zhao/22267 (last visited (last visited Jan. 26, 2022). The *Cum Laude* Society "recognizes not only superior scholarly achievement, but also the character qualities of areté (excellence), diké (justice), timé (honor)." *Congratulations to our Cum Laude Inductees!*, STALBANSSCHOOL.ORG (Apr. 4, 2017), https://www.stalbansschool.org/news-detail?pk=1102586.

[2] *See id.*

4

Zhao captained the fencing team his junior and senior seasons, earning All-Ivy accolades, and Edward Zhao was named an NCAA Fencing All-Academic Scholar of Distinction his senior year and graduated *magna cum laude*.[3]

Likewise, Harvard suffered no tangible economic loss from the Zhaos' admission, and none was foreseeable. The Zhao children did not deprive Harvard of admission slots reserved for genuine scholar-athletes because they were genuine scholar-athletes. And Coach Brand did not act faithlessly or dishonestly in recommending them as recruits for the same reason. Regardless of whether the government adequately alleged bribery, it did not, because it cannot, adequately allege that the defendants conspired to defraud Harvard in connection with the Zhaos' admission.

## ARGUMENT

"An indictment is ripe for dismissal if the facts demonstrate that, as a matter of law, the prosecution will not be able to prove each of the elements of the charged offense." *United States v. Sidoo*, 471 F. Supp. 3d 369, 376 (D. Mass. 2020); *see also United States v. Vicenzi*, No. CRIM. 87–222–N, 1988 WL 98634, at *3 (D. Mass. Feb. 16, 1988) ("[A] Court must dismiss [an] indictment if it fails to allege facts which constitute a prosecutable offense."). This is such a case. Specifically, the honest services fraud theory of the conspiracy charge must be dismissed because the government failed to allege (i) that tangible, economic harm to Harvard was a reasonably foreseeable result of the conspiracy, (ii) that the conspiracy involved deceit, or (iii) that Coach Brand had and violated a fiduciary duty to Harvard.

---

[3] *See id.*

I. **The Portion of Count One That Charges Conspiracy to Commit Honest Services Fraud Must Be Dismissed Because the Superseding Indictment Fails to Allege That the Defendants Reasonably Foresaw Economic Harm to Harvard.**

Courts have long recognized that "the plain language of § 1346 provides little guidance as to the conduct it prohibits." *United States v. Murphy*, 323 F.3d 102, 116 (3d Cir. 2003). That means, "[i]n the private sector context, § 1346 poses special risks." *United States v. Sun-Diamond Growers of Cal.*, 138 F.3d 961, 973 (D.C. Cir. 1998), *aff'd*, 526 U.S. 398 (1999). Because "[e]very material act of dishonesty by an employee deprives the employer of that worker's 'honest services,'" a plain reading of the statue suggests Congress intended to make a potentially limitless number of workplace violations – even trivial or harmless ones – into federal felonies. *Id.* Most courts, assuming Congress did not actually intend to do that, have discerned additional, implicit elements in the offense that serve to limit and better define its reach.

In *Martin*, the First Circuit held that one implicit element of a § 1346 violation is "'a failure to disclose something which in the knowledge or contemplation of the employee poses an independent business risk to the employer' or creates 'reasonably foreseeable economic harm' to the employer." 228 F.3d at 17 (citation omitted). The Fourth, Sixth, Eighth, Eleventh, and D.C. Circuits have all reached the same conclusion. *See United States v. Vinyard*, 266 F.3d 320, 329 (4th Cir. 2001) (holding that the government in a § 1346 case must prove the defendant "could reasonably foresee that the breach would create an identifiable economic risk" to the victim); *United States v. Frost*, 125 F.3d 346, 368 (6th Cir. 1997) ("The prosecution must prove that the employee intended to breach a fiduciary duty, and that the employee foresaw or reasonably should have foreseen that his employer might suffer an economic harm as a result of the breach."); *United States v. Pennington*, 168 F.3d 1060, 1065 (8th Cir. 1999) ("[W]hen dealing with business transactions in the private sector, a mere breach of fiduciary or employee duty may not be sufficient to deprive a client or corporation of 'honest services' for purposes of § 1346—to be guilty of mail

6

fraud, defendants must also cause or intend to cause actual harm or injury, and in most business contexts, that means financial or economic harm."); *United States v. deVegter*, 198 F.3d 1324, 1330 (11th Cir. 1999) (holding that "a private sector violation of § 1346 honest services fraud involves a breach of a fiduciary duty and reasonably foreseeable economic harm"); *Sun-Diamond*, 138 F.3d at 973 (similar).

The government may argue (as it did in *Khoury*, *supra*) that *Skilling* effectively overruled the First Circuit's decision in *Martin,* but the Court should reject that argument. Like the First Circuit in *Martin,* the Supreme Court in *Skilling* held that § 1346 contains implicit elements meant to define and limit its reach. It identified two such implicit elements: (i) that the offender violated a fiduciary duty and (ii) that the offender participated in a bribery or kickback scheme. *See Skilling*, 561 U.S. at 407. But it nowhere held that those were § 1346's *only* implicit elements. The Court acknowledged that the lower courts had discerned other implicit elements of the offense, *see id.* at 406-07, but it did not decide – or even discuss – whether any of them were necessary elements. The First Circuit, for its part, has not revisited its holding in *Martin* in the eleven years since *Skilling* was decided. It therefore remains the law in this circuit and is binding on this Court. *See Khoury*, 2021 WL 2784835 at \*5 (citing *Martin*, 228 F.3d at 17).[4]

---

[4] It also remains the law in other circuits. *See, e.g.*, *United States v. Lusk*, No. 2:15-cr-00124, 2017 WL 508589, at \*11 (S.D. W. Va. Feb. 7, 2017) (government must prove "the employee foresaw or reasonably should have foreseen that his employer might suffer an economic harm as a result of the breach [of fiduciary duty]" (quoting *Vinyard*, 266 F.3d at 327 and *Frost*, 125 F.3d at 368)); *Elgawhary v. United States*, No. CR DKC 14-0068, 2018 WL 398284, at \*5 (D. Md. Jan. 11, 2018) (similar); *United States v. Henderson*, No. 2:16-cr-0182-LSC-JEO, 2016 WL 5853743, at \*4 (N.D. Ala. Aug. 17, 2016) ("'[A] private sector violation of § 1346 honest services fraud involves a breach of a fiduciary duty and reasonably foreseeable economic harm'" (quoting *deVegter*, 198 F.3d at 1329)); *see also United States v. Woods*, 978 F.3d 554, 568 (8th Cir. 2020) (honest services wire fraud requires "the government [to] show that some actual harm or injury was contemplated by the schemer" (quoting *United States v. Jain*, 93 F.3d 436, 441 (8th Cir. 1996))).

The Superseding Indictment in this case is deficient because neither its charging language nor its description of the offense includes an allegation that the defendants reasonably foresaw economic harm to Harvard. The government simply believes (wrongly) that foreseeable economic harm is not a required element of honest services fraud. The government also was unable to allege economic harm in this case (despite doing so in every other college admissions case) because Harvard suffered none. The government's theory of economic harm in every other college admission case (at least the only theory to have convinced some judges) is that parents, assisted by coaches, obtained for their own children "admissions slots reserved for qualified Recruits" despite their own children's "athletic qualifications being below that of a typical Recruit." *Khoury*, 2021 WL 2784835, at *5. The government was unable to allege that here because that is not what happened. Not only were the Zhaos' athletic qualifications every bit as good as those of typical recruits, their academic qualifications were *better* than most; that made them especially valuable because it enabled Harvard to recruit other talented fencers with less spectacular academic qualifications while still maintaining the Academic Index score required for the team.[5] Both Zhaos fenced all four years and helped their teams win Ivy League championships while earning individual honors. They also paid full tuition and came with parents who were avid fans of the

---

[5] "The academic index is a metric that provides an indication of [a prospective student's] overall [academic] strength by taking account of standardized test scores and high school grades." *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 397 F. Supp. 3d 126, 148 n.29 (D. Mass. 2019). Ivy League rules require that each athletic team of its member schools – including Harvard – maintain an Academic Index average near that of the student body as a whole. *See, e.g.*, David Freed and Alexander Koenig, *Taking on the AI*, THECRIMSON.COM (May 30, 2013), https://www.thecrimson.com/article/2013/5/30/harvard-academic-index-explanation/ (last visited Jan. 26, 2022) ("The Ivy League has set a minimum AI of 176 for any student-athlete offered admission, corresponding roughly to a 3.0 GPA and an 1140 out of 1600 on the SAT I. However, each team's AI must remain within one standard deviation (estimated to be between 12-16 points) of the average AI for the entire student body. Given that no Ivy League institution has an average AI below 200, no athletic program in the Ancient Eight approaches that 176 threshold.").

fencing program and supported it financially. Indeed, the defendants foresaw, correctly, nothing but *economic benefit* to Harvard from the Zhaos' admission, and the government cannot truthfully allege otherwise.

In sum, neither the Superseding Indictment's charging language nor its description of the offense includes allegations of reasonably foreseeable economic harm to Harvard. That requirement remains an implicit element of private-sector honest services fraud in the First Circuit. And where, as here, an "element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense." *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000) (citation omitted). Because the Superseding Indictment fails adequately to allege the elements of a § 1346 offense, the portion of Count One that charges a conspiracy to commit honest services fraud must be dismissed.

**II.     The Portion of Count One That Charges Conspiracy to Commit Honest Services Fraud Must be Dismissed for a Second Reason: The Indictment Fails to Allege an Intent to Deceive.**

The Superseding Indictment fails to plead another required element of mail fraud: an intent to deceive. "To establish mail fraud—in cases involving honest services fraud and otherwise—the alleged scheme must involve deception in the deprivation of money, property, or the right to honest services. . . . While a misrepresentation of fact is not required to establish mail fraud, a demonstrated intent to deceive is required." *Sawyer*, 85 F.3d at 732 (citations omitted). The Superseding Indictment does not allege that the defendants intended to deceive Harvard about anything. It alleges only that Mr. Zhao paid Coach Brand money in exchange for him designating Mr. Zhao's sons as fencing recruits. Regardless of whether that is an adequate allegation of bribery, breach of fiduciary duty, or deprivation of honest services, it is not, standing alone, an allegation of an intent to deceive.

9

The Superseding Indictment stands in stark contrast to the indictments in the government's other college admissions cases, which all contain fulsome allegations of deceit. In *Ernst*, for example, the court observed that the indictment in that case adequately alleged deceit because it "specifically allege[d] that [the defendants] *designated athletic recruits not based on their merit as recruits*, but in return for bribe payments . . . and that these bribe payments and *unmerited designations were concealed* so as to frustrate the universities' ability to detect the illicit *quid pro quo*." 502 F. Supp. 3d at 653–54 (emphasis added); *see also* Superseding Indictment ¶ 37(c), *United States v. Ernst, et al.*, No. 19-cr-10081 (D. Mass. Oct. 22, 2019), Dkt. 272 ("Ernst SI") (alleging defendants designated students as recruits "*with little or no regard for the applicants' athletic abilities*, in exchange for bribes" (emphasis added)), ¶ 120(f) (manner and means of conspiracy included "[b]ribing [various individuals] to designate applicants as purported athletic recruits . . . *with little or no regard for the applicants' athletic abilitie*s and, in some cases, even though the applicants did not play the sport they were purportedly recruited to play" (emphasis added)), ¶ 120(h) (manner and means of fraud conspiracy included "[c]oncealing the fraud in order to prevent the Universities . . . from revoking the students' admission[ or] expelling them"), ¶ 124(c) (manner and means of federal programs bribery conspiracy included "[c]oncealing the bribes and other falsities to prevent USC from revoking the students' admission or expelling them"), ¶ 128(c) (similar), ¶ 132(c) (similar).

Here, in contrast, although the Superseding Indictment alleges that Mr. Zhao bribed Coach Brand to designate his sons as athletic recruits, it does not allege that Coach Brand deceived Harvard about the Zhaos' athletic merit, or that the defendants concealed the alleged bribes from Harvard, let alone intentionally concealed them. To allege bribery of an employee – which is all the Superseding Indictment does – is not enough to allege a scheme to defraud: a "scheme must

10

be intended to *deceive* another, by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct." *Sanchez v. Triple-S Mgmt. Corp.*, 492 F.3d 1, 12 (1st Cir. 2007) (quoting *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786, 791 (1st Cir. 1990) (cited with approval in *Sawyer*, 85 F.3d at 732). Because the Superseding Indictment omits such an allegation, the portion of Count One that alleges a scheme to commit honest services fraud must be dismissed.

### III. The Portion of Count One That Charges Conspiracy to Commit Honest Services Fraud Must be Dismissed for a Third Reason: The Indictment Fails to Allege that Coach Brand Violated a Fiduciary Duty Owed to Harvard.

Proof that a private-sector employee committed honest services fraud requires proof that the employee was a fiduciary who violated a fiduciary duty through a bribery or kickback scheme. *United States v. Simon*, 12 F.4th 1, 28 (1st Cir. 2021) ("A person contravenes [§ 1346] if, '*in violation of a fiduciary duty*, [he] participate[s] in bribery or kickback schemes.'" (alteration in original) (emphasis added) (quoting *Skilling*, 561 U.S. at 407)); *United States v. Czubinski*, 106 F.3d 1069, 1077 (1st Cir. 1997). But the Superseding Indictment fails to allege that Coach Brand was a fiduciary, and it also fails to allege the existence of a fiduciary duty that he violated through a bribery or kickback scheme. Those omissions are fatal to the honest services portion of Count One of the Superseding Indictment.

The need to allege that at least one offender in a conspiracy to commit honest services fraud was a fiduciary is elementary, as the government recognized by including such an allegation in every other one of its college admissions fraud indictments. In *Ernst*, for example, the court rejected a challenge to the indictment based on a failure to allege that at least one coconspirator was a fiduciary because that indictment specifically "allege[d] that each of the Defendants, in the capacity in which they were employed, owed a duty of honest and faithful services to the universities that so employed them." 502 F. Supp. 3d at 653; *see, e.g.*, Ernst SI ¶ 1 ("In that

11

capacity [as men's and women's tennis coach], ERNST *owed a duty of honest and faithful services* to Georgetown." (emphasis added)), ¶¶ 2, 5–7, 9 (similar, for others employed at other universities). Here, in contrast, the Superseding Indictment merely alleges that Coach Brand was "employed as the head coach of . . . fencing at Harvard" and in that capacity was "an agent of Harvard." SI ¶ 1. But not every employee or agent is a fiduciary; under well-settled law, only "[e]mployees occupying a position of trust and confidence owe a duty of loyalty to their employer and must protect the interests of the employer." *Chelsea Indus., Inc. v. Gaffney*, 449 N.E.2d 320, 326 (Mass. 1983); *see also TalentBurst, Inc. v. Collabera, Inc.*, 567 F. Supp. 2d 261, 266 (D. Mass. 2008) ("If every employee owed a fiduciary duty, the words 'in a position of trust and confidence' would be surplusage."). The omission of this necessary allegation dooms the honest-services portion of Count One.

Even assuming, moreover, that the Superseding Indictment adequately alleged that Coach Brand was a fiduciary, that would still not be enough; for "to say that a man is a fiduciary only begins [the] analysis; it gives direction to further inquiry. . . . What obligations does he owe as a fiduciary?" *SEC v. Chenery Corp.*, 318 U.S. 80, 85–86 (1943). The Superseding Indictment does not allege, nor could it truthfully allege, that Coach Brand acted dishonestly or disloyally in designating the Zhaos as fencing recruits, even assuming he was bribed to do so (he was not). And it certainly could not truthfully allege that the defendants *intended* Coach Brand to violate a duty to designate the Zhaos as recruits based on athletic and academic merit. This fundamental omission also mandates dismissal of the honest services portion of the Superseding Indictment.

## CONCLUSION

Defendants respectfully request that this Court dismiss the honest services fraud theory of prosecution as an object of the alleged Conspiracy in Count One, pursuant to Federal Rules of Criminal Procedure 12(b)(1) and 12(b)(3)(B)(v).

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rules 7.1(d) and 112.1, Defendants respectfully request oral argument on this motion.

Dated: January 28, 2022                                             Respectfully Submitted,


*/s/ Michael T. Packard*
William D. Weinreb (BBO #557826)
Michael T. Packard (BBO #676934)
QUINN EMANUEL URQUHART
& SULLIVAN LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: 617-712-7100
billweinreb@quinnemanuel.com
michaelpackard@quinnemanuel.com

*Attorneys for Jie "Jack" Zhao*


Douglas S. Brooks (BBO #636697)
R. Matthew Rickman
(BBO #637160)
LIBBY HOOPES BROOKS, P.C.
399 Boylston Street
Boston, MA 02116
Tel: 617-338-9300
dbrooks@lhblaw.com
mrickman@lhblaw.com

*Attorneys for Peter Brand*

13

**LOCAL RULE 7.1(a)(2) CERTIFICATION**

I hereby certify that undersigned counsel conferred with the government in an attempt to resolve or narrow the issues raised by this motion. The government opposes this motion.

                                                    */s/ Michael T. Packard*
                                                   Michael T. Packard


**CERTIFICATE OF SERVICE**

I hereby certify that on **January 28, 2022**, a true and correct copy of the foregoing document was filed through the Court's CM/ECF system, and accordingly, the document will be sent electronically to all participants registered to receive electronic notice in this case.

                                                    */s/ Michael T. Packard*
                                                   Michael T. Packard